# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEUDI MENDEZ NAVA, | Case No. 1:26-cv-01716-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| v. | |
| KRISTI NOEM, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Venezuela who entered the United States on or around August of 2021 together with his daughter and surrendered himself to immigration authorities at the border. Petitioner was granted interim parole pursuant to 8 U.S.C. § 1182(d)(5), released on reporting requirements, and placed in removal proceedings pursuant to Immigration and Nationality Act § 240. (ECF No. 1 at 4.[1])

Petitioner's Temporary Protected Status ("TPS")[2] application was filed and approved in

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

[2] "Pursuant to the TPS statute, 8 U.S.C. § 1254a, the DHS Secretary may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other 'extraordinary and

April 2024, making him a beneficiary of the 2023 TPS designation for Venezuela. This grant of TPS remained valid for a period of one year, until April 2025. (ECF No. 1 at 5.) In July 2025, Petitioner timely re-registered for TPS pursuant to the January 17, 2025 extension of the 2023 Designation made by then-Department of Homeland Security ("DHS") Secretary Alejandro Mayorkas, which extended the TPS designation through October 2, 2026. (ECF No. 1 at 5.)

On October 14, 2025, Petitioner attended a routine scheduled U.S. Immigration and Customs Enforcement ("ICE") check-in. Without notice or explanation, Petitioner was detained. The petition alleges that Petitioner has no criminal record and has diligently complied with all ICE check-in requirements and other conditions of supervision for over four years with his supervision requirements being reduced over time. (ECF No. 1 at 6.)

On March 2, 2026, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) The assigned district judge denied the motion for TRO as untimely. (ECF No. 5.) On March 24, 2026, Respondents filed response. (ECF No. 6.) On April 8, 2026, and Petitioner filed an untimely reply.[3] (ECF No.7.)

## II.

## DISCUSSION

### A. Statutory Framework

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

---

temporary conditions,' unless the Secretary 'finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States.'" Nat'l TPS All. v. Noem, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." Nat'l TPS All., 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(a)(1), (b)(2)). "Other restrictions apply: applicants must be 'admissible' under the immigration laws, id. § 1254a(c)(1)(A)(iii); they must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States,' id. § 1254a(c)(2)(B)(i); and they risk revocation of status if the Secretary 'finds that the [noncitizen] was not in fact eligible for such status,' id. § 1254a(c)(3)(A)." Nat'l TPS All., 150 F.4th at 1010

[3] Petitioner does not explain the untimely filing, but the Court will consider the reply in the interest of justice.

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[4] Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens." Id.

"Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion." Jennings, 583 U.S. at 287 (citations omitted). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum

---

[4] Subsection C, which is not at issue here, "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

... or a fear of persecution,' then that alien is referred for an asylum interview." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)) (citing 8 C.F.R. §§ 212.5(b), 235.3 (2017)). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

**B. Due Process**

In the fourth cause of action, Petitioner asserts that his re-detention without a pre-deprivation hearing violated due process. (ECF No. 1 at 19–22.) Respondents argue that Petitioner is "an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)" and "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." (ECF No. 6 at 1, 2.)

4

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Regardless of whether mandatory detention under § 1225(b) is facially constitutional, and "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released" on parole. J.E.H.G., 2025 WL 3523108, at *10.

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See D. L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) ("Following *Pinchi*, a substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections.").

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been

applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Second, the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Rocha Chavarria, 2025 WL 3533606, at *4. See Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) ("Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025))). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court recommends finding that Petitioner has a protected liberty interest in remaining out of custody and that his re-detention without a bond hearing violates due process.[5]

---

[5] In light of this conclusion, the Court declines to address Petitioner's other causes of action. Specifically with respect to Petitioner's TPS claim, although a noncitizen "provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States," 8 U.S.C. § 1254a(d)(4), the Court declines to issue a recommendation given the "winding history," "prolonged litigation," Herrera v. Noem, No. CV-26-00625-PHX-MTL (JFM), --- F. Supp. 3d ----, 2026 WL 800721, at *4, 5 (D. Ariz. Mar. 12, 2026), and uncertainty regarding the impact of the Ninth Circuit affirming the district court's partial summary judgment and setting aside the Secretary's vacatur and termination of Venezuela's TPS designation,

The Court considers whether a pre-deprivation or post-deprivation bond hearing is appropriate based on the facts of this case.

The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023).

<hr>

Nat'l TPS All. v. Noem, 166 F.4th 739 (9th Cir. 2026), and the district court's declaratory judgment, Nat'l TPS All. v. Noem, No. 25-CV-01766-EMC, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025), in light of the Supreme Court's prior grant of a stay "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought," Noem v. Nat'l TPS All., 146 S. Ct. 23, 24 (2025).

> "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at \*8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.
>
> *Id*.

J.E.H.G., 2025 WL 3523108, at \*11–12.

Here, there is nothing in the record before this Court establishing that Petitioner has violated any conditions of his release. Respondents do not argue that Petitioner's re-detention was based on any violations or that Petitioner is now considered a flight risk or danger to the community. Accordingly, the Court recommends that a pre-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at \*14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at \*7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at \*14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

**C. Abeyance Pending Resolution of Ninth Circuit Appeals**

Alternatively, Respondents argue that the Court should hold the matter in abeyance pending the Ninth Circuit's resolutions of Rodriguez Vazquez v. Bostock, No. 25-6842, and Benavides Carballo v. Andrews, No. 25-6533. (ECF No. 6 at 3.) The Court recommends declining to hold the petition in abeyance given the uncertain timeline regarding any Ninth Circuit decisions in the above cases.

**III.**

**RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the fourth cause of action; and

///

8

2. Respondents be directed to immediately release Petitioner on the conditions of his prior release from custody until DHS proves to a neutral adjudicator by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 10, 2026**

STANLEY A. BOONE
United States Magistrate Judge

9